**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| VERTICAL BRIDGE DEVELOPMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE TOWN OF WESTLAKE, TEXAS and THE TOWN COUNCIL FOR THE TOWN OF WESTLAKE, TEXAS <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. |

**COMPLAINT**

Plaintiff Vertical Bridge Development, LLC ("Vertical Bridge" or "Plaintiff"), by and through undersigned counsel, and for its Complaint against Defendants the Town of Westlake, Texas (the "Town") and the Town Council for the Town of Westlake, Texas (the "Town Council," collectively, the "Town Defendants") states and alleges as follows:

**NATURE OF THE MATTER**

1. This action seeks relief from the Town Defendants' improper and arbitrary denial (the "Denial") of Vertical Bridge's application to construct a wireless communications tower (colloquially called a "cell tower;" hereinafter, the "Proposed Tower") on property located at 2102 Dove Road, Westlake, Texas 76262 (the "Property").

2. The Denial violates the Federal Telecommunications Act of 1996 (47 U.S.C. Ch. 5) (the "TCA"), as the Denial amounts to an effective prohibition of enhanced cellular service. 47 U.S.C. § 332(c)(7)(B)(i)(II). In addition, the Town's telecommunications ordinance violates and is preempted by 47 U.S.C. § 253(a) because it has the effect of prohibiting the ability of three entities to provide telecommunications services.

3. The Denial further violates 47 U.S.C. § 332(c)(7)(B)(iii)'s requirement that it "be in writing and supported by substantial evidence contained in a written record."

4. Vertical Bridge seeks declaratory, injunctive, and mandamus relief pursuant to 47 U.S.C. §§ 332 & 253 and 28 U.S.C. § 2201 and requests that the Town Defendants be ordered to approve Vertical Bridge's Application or that the Application be deemed approved.

## PARTIES

5. Vertical Bridge Development, LLC, and at all times relevant hereto has been, a Delaware limited liability company registered to conduct and conducting business in the State of Texas. Vertical Bridge's primary place of business is in Boca Raton, Florida.

6. The Town is a political subdivision in the State of Texas.

7. The Town Council is the duly authorized governing body for the Town.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1367 because these claims arise under the laws of the United States, specifically 47 U.S.C. §§ 332(c)(7) and 253.

9. This case presents an actual controversy under Article III of the United States Constitution and 28 U.S.C. § 2201 because the Town Defendants have violated Vertical Bridge's federal rights under the TCA.

10. Venue is proper in this Court because the Town is located in this judicial district, and the property affected is located within this judicial district.

11. The TCA provides that "the Court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7).

## FACTS COMMON TO ALL COUNTS

12. Vertical Bridge is in the wireless telecommunications industry and places, constructs, modifies, operates, and manages telecommunication infrastructure on behalf of its clients across the United States.

### A. PROPOSED TOWER

13. After first looking for available collocation opportunities, three different major national carriers and providers of wireless communications services and fixed internet services (the "Carriers") engaged Vertical Bridge to locate, construct, and operate a telecommunications tower in the Town in order to resolve a critical gap in coverage in the area around Dove Road and Davis Boulevard (the "Gap Area") and improve their overall networks.

14. There are no existing towers in the Gap Area. There are also no structures of sufficient height for collocation in the Gap Area.

15. Vertical Bridge conducted a thorough review of the Gap Area to determine which location would best achieve the Carriers' objectives as well as best comply with the requirements of federal, state, and local law.

16. The Gap Area is densely populated with residences, which is precisely what has driven the need for improved service in the Gap Area.

17. Vertical Bridge approached the largest landowner in the Gap Area, Fidelity Investments, to request placement on its property. Fidelity Investments was unwilling to lease property to Vertical Bridge for placement of the Proposed Tower.

18. Vertical Bridge cooperated with the Town to identify a suitable alternative location for the Proposed Tower.

19. Vertical Bridge first began efforts to work with the Town to identify a suitable site for the Proposed Tower in 2018.

20. Vertical Bridge and the Town agreed that Fire Station Number 1 (*i.e.* the Property) would be the ideal location for placement of the Proposed Tower in the Gap Area. The Town Council voted to enter into a lease with Vertical Bridge in January 2022 for placement of the Proposed Tower on the Property. The lease was fully executed on November 14, 2022.

**B.    VERTICAL BRIDGE'S APPLICATION TO CONSTRUCT THE PROPOSED TOWER**

21. Initially, Vertical Bridge applied to construct a 150-foot tower, but following a community meeting with residents on January 17, 2023, lowered the height of the Proposed Tower to 130 feet (with a four-foot lighting rod), the minimum height necessary to address each Carrier's gap in the Gap Area.

22. Vertical Bridge's Proposed Tower utilizes a unique stealth design, which will blend architecturally and visually with the existing fire station building on the Property and harmonize with the aesthetics of the nearby community. The limestone finish on the exterior of the Proposed Tower matches the fire station in type, coursing, and size. Moreover, the Proposed Tower will not be lighted. Photo simulations of the Proposed Tower are below:









23. The Property is zoned as a Government Use District. Cell towers are allowed on properties zoned as Government Use District with a Specific Use Permit ("SUP"). See Article III, Division 2 (the "Code") (attached as Exhibit 1) at §102-96.

24. Sections 102-94 and 102-96 of the Code set out the criteria for issuance of an SUP for a cell tower.

25. Except for the Code's height limitation, the Proposed Tower satisfies all of the requirements for construction of a cell tower in a non-residential district.

26. The Code does not allow towers taller than 80-feet in non-residential districts.

27. None of the Carriers can remedy the gap in the Gap Area with an 80-foot tower.

28. Vertical Bridge attended a mandatory pre-application meeting with the Town on March 21, 2024, to discuss the Proposed Tower.

29. Vertical Bridge then submitted an application for a SUP to construct the Proposed Tower (the "Application") on April 22, 2024.

30. The Town did not notify Vertical Bridge of any deficiencies in its Application.

C.  **INITIAL CONSIDERATION AND RECOMMENDATION**

31. On May 10, 2024, the Town's Planning Director wrote Vertical Bridge:

> There were very few DRC comments on the request as these plans, in their various iterations, have been reviewed multiple times in the past by staff. The only design comments we have is that any stone on the tower should match the Fire Station stone in type, coursing and size. We realize that there are waiver requests, for which you have adequately documented the justifications in the submittal documents.

The waivers mentioned by the Planning Director were for the increase in height. As discussed *supra*, the stone on the Proposed Tower would match the fire station sone in type, coursing, and size.

32. The Town scheduled the Application for a hearing before the Town Planning Commission for July 9, 2024.

33. The Interim Town Planner submitted a staff report (the "Staff Report") ahead of the July 9, 2024 Planning commission hearing. The Staff Report is attached as Exhibit 2.

34. The Staff Report made the following findings:

   a. "The cell tower and facility will solve a critical gap in wireless service for multiple wireless providers …"

   b. "The proposed unique stealth design is architecturally consistent with the existing Fire Station Facility."

    c. "The SUP application is the culmination of an agreement, approved by Resolution 22-05 on January 24, 2022 between Vertical Bridge … and the Town of West Lake."

    d. "Discussions regarding a possible cell tower, on the Fire Station site, date back to December 2018."

    e. "The stealth tower as depicted in the attachment uses the same-colored stone to match the stone used in the Fire Station."

35. With the Application, Vertical Bridge submitted Radio Frequency Maps ("RF maps") for each of the three Carriers that show the significant gaps in coverages in the Gap Area. Vertical Bridge also submitted a narrative explaining why the Proposed Tower was the least intrusive means of remedying the gaps in the Carriers' coverage in the Gap Area.

36. At the July 9, 2024 Planning Commission hearing, Vertical Bridge's representative explained the need for the Proposed Tower and why the Proposed Tower was the least intrusive means of remedying the gaps in the Carriers' coverage in the Gap Area. Vertical Bridge also presented an RF engineer to explain why a tower in this location and at this height is required to remedy the gaps.

37. One member of the Planning Commission conceded that it is indisputable that there is a gap in coverage and need for a tower.

38. The Planning Commission voted to recommend denial of the SUP Application, noting (1) there is no support for the project, and (2) other options to provide coverage have not been explored adequately. No evidence of a viable alternative site or other options were submitted at the July 9 hearing.

**D.   THE TOWN COUNCIL DECISION**

39. On July 15, 2024, the Town Council held a hearing on Vertical Bridge's Application.

40. Vertical Bridge again presented evidence, including testimony of an RF engineer, of the significant coverage gaps in the Gap Area and that there was not a less intrusive means of remedying the Carriers' gaps in the Gap Area.

41. The Town Council expressed skepticism that there was not another solution for remedying the gaps with no evidence presented in support of that unsubstantiated skepticism.

42. Nonetheless, the Town Council denied Vertical Bridge's Application.

43. On August 5, 2024, the Town Council voted to approve the minutes from its July 15, 2024 hearing (the "Minutes"). The Minutes are attached as Exhibit 3.

44. The Denial was not final until the Minutes were approved.

45. No written denial was provided to Vertical Bridge except for the Minutes.

**COUNT 1**
**VIOLATION OF 47 U.S.C. § 332(c)7(B)(iii)**
**(LACK OF SUBSTANTIAL EVIDENCE UNDER TCA)**

46. Vertical Bridge restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

47. The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and supported by substantial evidence contained in a written record." 42 U.S.C. § 332(c)(7)(B)(iii).

48. Based on the record before the Town Defendants, the Denial of the Application is not supported by substantial evidence and as such is a violation of the TCA.

49. First, the Town Defendants failed to issue a written denial that provided the bases of their decision, in violation of the TCA and the Code. The Court must, therefore, assume there is no lawful basis for the Denial.

50. Second, the Denial is not based in local or state law.

51. Third, whatever the bases for the Denial, they are not supported by substantial evidence found in the written record.

52. The Town Defendants' failure to comply with the requirements of the TCA, and their refusal to approve the Application has caused and will continue to cause Vertical Bridge irreparable harm as Vertical Bridge and the Carriers cannot provide improved wireless service without the Proposed Tower.

53. Vertical Bridge respectfully requests that the Court declare that the Denial of Vertical Bridge's Application is not supported by substantial evidence in the written record, in violation of the TCA.

54. Additionally, Vertical Bridge requests the Court issue an Order (i) prohibiting the Town Defendants from denying the Application, (ii) requiring the Town Defendants to complete the ministerial act of approving the Application, and (iii) reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues.

## COUNT 2
### VIOLATION OF 47 U.S.C. § 332(c)7(B)(i)(II)
### (EFFECTIVE PROHIBITION UNDER TCA)

55. Vertical Bridge restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

56. The TCA prohibits local regulation of the placement, construction, or modification of personal wireless service facilities that "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

57. The Carriers have substantial gaps in coverages in the area around the Proposed Tower.

58. The Carriers cannot remedy the substantial gaps and provide reliable coverage in the Gap Area without the construction of the Proposed Tower.

59. The Denial materially inhibits Vertical Bridge's and the Carriers' ability to provide enhanced coverage in the area.

60. The Denial has effectively prohibited the provision of personal wireless services.

61. The Town Defendants' failure to comply with the requirements of the TCA, and their refusal to approve the Application has caused and will continue to cause Vertical Bridge irreparable harm as Vertical Bridge and the Carriers cannot provide improved wireless service without the Proposed Tower.

62. Vertical Bridge respectfully requests that the Court issue an Order declaring that the Denial of Vertical Bridge's Application is an effective prohibition in violation of the TCA.

63. Additionally, Vertical Bridge requests the Court issue an Order (i) prohibiting the Town Defendants from denying the Application, (ii) requiring the Town Defendants to complete the ministerial act of approving the Application, and (iii) reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues.

**COUNT 3**
**VIOLATION OF 47 U.S.C. § 253(a)**
**(EFFECTIVE PROHIBITION UNDER TCA—PREEMPTION)**

64. Vertical Bridge restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

65. The TCA provides, "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).

66. The TCA preempts any ordinance that has such an effect.

67. This Court has authority to hear Vertical Bridge's claim for violation of 47 U.S.C. § 253.

68. The 80-foot height limitation for cell towers constructed in non-residential zoning areas has prohibited three major carriers from remedying significant gaps in coverage in the Gap Area.

69. The height limit materially inhibits Vertical Bridge's and the Carriers' ability to provide enhanced coverage in the area.

70. The height limit therefore has effectively prohibited the provision of personal wireless services.

71. The Town Defendants' failure to comply with the requirements of the TCA, and their refusal to approve the Application has caused and will continue to cause Vertical Bridge irreparable harm as Vertical Bridge and the Carriers cannot provide improved wireless service without the Proposed Tower.

72. Vertical Bridge respectfully requests that the Court issue an Order declaring that the height limitation in the Town's Code is preempted by the TCA as an effective prohibition of telecommunication service.

73. Additionally, Vertical Bridge requests the Court issue an Order (i) prohibiting the Town Defendants from denying the Application, (ii) requiring the Town Defendants to complete the ministerial act of approving the Application, and (iii) reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues.

## DECLARATORY RELIEF
### (FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-2202)

74. Vertical Bridge restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

75. Based on the record before the Town Defendants, the Denial of Vertical Bridge's Application is not supported by substantial evidence, violating the TCA. *See* 42 U.S.C. § 332(c)(7)(B)(iii).

76. Further, the Denial of Vertical Bridge's Application amounts to effective prohibition, violating the TCA. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II).

77. The height limitation in the Code also has the effect of prohibiting telecommunications service, in violation of the TCA. *See* 47 U.S.C. § 253(a).

78. A real, immediate, actual, justifiable, and substantial continuing controversy exists between Vertical Bridge and the Town Defendants as to whether the Denial of Vertical Bridge's Application violates the TCA and as to whether the height limitation in the Code is preempted by the TCA.

79. There is a bona fide, actual, present, and practical need for a declaration of Vertical Bridge's right to an approval of its Application to construct the Proposed Tower.

80. Vertical Bridge's interest in the declaration of its rights are actual and adverse to those of the Town Defendants.

81. All conditions precedent to the relief demanded herein have been performed.

82. Vertical Bridge respectfully requests that the Court issue an Order declaring:

   i. The Denial of Vertical Bridge's Application is not supported by substantial evidence in the written record, in violation of the TCA;

   ii. The Town Defendants effectively prohibited cell and wireless service, violating the TCA;

   iii. The height limitation in the Code is preempted by the TCA because it effectively prohibits cell and wireless service, violating the TCA; and,

   iv. Vertical Bridge's right to approval of its Application.

83. Vertical Bridge further requests the Court issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues.

## WRIT OF CERTIORARI/MANDAMUS

84. Vertical Bridge restates and incorporates by reference the preceding paragraphs as if fully set forth herein.

85. The Denial of the Application is subject to review by certiorari and/or mandamus.

86. Vertical Bridge is an aggrieved person because the Town Defendants' refusal to approve the Application has caused and will continue to cause Vertical Bridge irreparable harm as Vertical Bridge and the Carriers cannot provide improved wireless service without the Proposed Tower.

87. The Denial was illegal, null, and void because the Town Defendants failed to follow their own procedure for the approval of wireless telecommunications towers with respect to the Application, failed to provide a written basis for denial, violated the TCA, and lacked discretion to deny the Application.

88. All conditions precedent to the relief demanded herein have been performed.

89. Vertical Bridge requests the Court issue an Order requiring the Town Defendants to certify to this Court a true, full, and complete copy of the record of the acts and procedures involved in the Denial of Vertical Bridge's Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA.

90. Additionally, Vertical Bridge requests that the Court issue a writ of mandamus and/or mandamus directing the Town Defendants to discharge their duties properly and to approve the Application.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Vertical Bridge Development, LLC respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants the Town of Westlake, Texas and the Town Council for the Town of Westlake, Texas, for all relief sought in this Complaint, including:

   i. An order requiring the Town Defendants to certify to this Court a true, full, and complete copy of the record of the acts and procedures involved in the Denial of Vertical Bridge's Application.

   ii. Declarations from this Court that:

      a. The Denial of Vertical Bridge's Application is not supported by substantial evidence in the written record in violation of the TCA;

      b. The Denial of Vertical Bridge's Application is an effective prohibition in violation of the TCA;

      c. The height limitation in the Town's Code is preempted by the TCA as an effective prohibition of telecommunications service; and,

      d. Plaintiff is entitled to approval of its Application.

   iii. An order prohibiting the Town Defendants from denying the Application and requiring the Town Defendants to complete the ministerial act of approving the Application.

    iv.    A writ of mandamus and/or mandamus directing the Town Defendants to discharge their duties properly and in compliance with the above-requested declarations, and to approve the Application.

    v.    An order reserving jurisdiction to this Court to resolve any issues between the parties as to further permit issues;

    vi.    Awarding Plaintiff all costs of Court; and,

    vii.    Awarding Plaintiff all such other and further relief as the Court deems just and proper.

Dated: September 3, 2024

Respectfully Submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

 /s/  *Justin D. Hanna*
Justin D. Hanna
Texas Bar No. 24095726
2200 Ross Ave., Suite 4200W
Dallas, Texas 75201
(214) 721-8000 (Telephone)
(214) 721-8100 (Facsimile)
justin.hanna@bclplaw.com


William Bebb Francis, III, Esq.
Bar Number: 07360500
The Francis Law Firm, P.C.
112 E. Pecan Street, Suite 550
San Antonio, Texas 78205
Tel. 210-222-1100
Fax 210-222-2468
wbfrancis@francislawfirm.com

**ATTORNEYS FOR PLAINTIFF VERTICAL BRIDGE DEVELOPMENT, LLC**