UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| VERTICAL BRIDGE DEVELOPMENT, LLC § § § | |
| v. § | CIVIL NO. 4:24-CV-804-SDJ |
| § | |
| THE TOWN OF WESTLAKE, TEXAS, ET AL. § § § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Town of Westlake, Texas, and Town Council for the Town of Westlake, Texas's (collectively, "Westlake") Motion to Transfer Venue and Brief in Support. (Dkt. #14). Westlake seeks to transfer this case to the Fort Worth Division of the Northern District of Texas. Because the Court concludes that Westlake has not shown that the Northern District of Texas is clearly a more convenient venue, the motion is denied.

## I. LEGAL STANDARD

Section 1404(a) permits the transfer of civil actions for the convenience of the parties and witnesses and in the interest of justice to other districts or divisions where the plaintiffs could have properly brought the action. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under Section 1404(a). *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 311 (5th Cir. 2008) (en banc). In addition, Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

The party seeking transfer under Section 1404(a) must show good cause. *Volkswagen II*, 545 F.3d at 315. Indeed, "[i]t is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (quotations omitted). "[T]o establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.*

When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. By contrast, when the movant demonstrates that the transferee venue is clearly more convenient, the movant has shown good cause, and the court should transfer the case. *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 19-CV-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen II*, 545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of

2

proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Id.* (quotations omitted). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (alteration in original) (quotations omitted).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* (quotations omitted). Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of 'clearly more convenient.'" *Quest NetTech*, 2019 WL 6344267, at *7 (holding that the movant had met its burden when five factors were neutral, two weighed in favor of transfer, and one weighed "solidly" in favor of transfer). And when "there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022).

## II. BACKGROUND

Defendant Westlake sits in both Denton County (Eastern District of Texas) and Tarrant County (Northern District of Texas).[1] (Dkt. #14 at 1) (conceding that "a small portion of Westlake's Town Limits is within Denton County"). Plaintiff Vertical Bridge Development, LLC ("Vertical Bridge") is a limited liability company that "places, constructs, modifies, operates, and manages telecommunication infrastructure on behalf of its clients across the United States." (Dkt. #1 ¶ 12).

This case arises under an alleged violation of the Federal Telecommunications Act of 1996 ("Act"). (Dkt. #1 ¶ 2). In short, Vertical Bridge applied to construct a wireless communications tower in Westlake, entered into a lease with Westlake on a proposed tower location, requested a special-use permit to comply with county ordinances, and had that permit denied by the town council. (Dkt. #1 ¶¶ 13–42). Vertical Bridge argues that this denial either violates the Act or that the county ordinance is preempted by the Act. (Dkt. #1 ¶¶ 46–73).

Within a few months of Vertical Bridge filing this suit, Westlake moved to transfer this case to the Fort Worth Division of the Northern District of Texas. (Dkt. #14). Westlake addresses only two of the *Gilbert* factors in its briefing. First, Westlake states that "documents and other evidentiary materials are all located in Westlake in Tarrant County." (Dkt. #14 at 4). No support is provided for this conclusory assertion. Second, Westlake notes that "[a]ll of the Westlake witnesses

---

[1] Although Westlake believes the town council is not a proper party here, the Court need not make that determination now. Whether or not the town council is a proper party does not alter the analysis of Westlake's venue-transfer motion.

work and live in Tarrant County," (Dkt. #14 at 4), which places them closer to the Fort Worth courthouse. Because the cost of attendance for these witnesses would be higher for a trial in the Plano courthouse, Westlake alleges, the case should be transferred. (Dkt. #14 at 2–4); (Dkt. #28 at 3–5).[2] Although Westlake's opening brief lacked evidentiary support, its belated[3] reply brief includes affidavits and other attachments that purportedly provide such support. *See, e.g.*, (Dkt. #28-1 to #28-11).

In response, Vertical Bridge notes that Westlake failed to analyze six of the eight *Gilbert* factors. (Dkt. #26 at 2). It then explains why these factors are all neutral or weigh against transfer. (Dkt. #26 at 5–9). For the remaining two factors—sources of proof and cost to willing witnesses—Vertical Bridge points out Westlake's lack of evidentiary support for the former and the contradictory evidence submitted in support of the latter. (Dkt. #26 at 4); (Dkt. #29 at 2–3). Finally, in Vertical Bridge's sur-reply, (Dkt. #29 at 2), it points the Court to Westlake's concession that all the *Gilbert* factors but one are neutral or irrelevant: "Costs and inconvenience to non-party witnesses is the most, *and perhaps only*, relevant factor here *because all other factors are neutral.*" (Dkt. #28 at 1) (emphases added).

Westlake's concession is largely accurate. In fact, none of the *Gilbert* factors favors transfer. Because Westlake has failed to demonstrate that the Fort Worth

---

[2] This case was filed in the Sherman Division of the Eastern District of Texas and was assigned to the undersigned. All hearings in this case, and any trial, will take place in the Plano courthouse.

[3] Although the Court could strike Westlake's week-late reply brief, any prejudice to Vertical Bridge is cured through the court's consideration of Vertical Bridge's sur-reply. (Dkt. #29). The Court admonishes Westlake, however, that untimely filings made without leave of court are viewed unfavorably and may be stricken.

5

Division of the Northern District of Texas is clearly a more convenient venue for this action, its venue-transfer motion is denied.

## III. DISCUSSION

The threshold inquiry for a Section 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). Venue is proper in a judicial district in which (1) any defendant resides, if all defendants are residents of that State; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b).

The Court finds that venue would have been proper in the Northern District of Texas. The property at issue here is in Tarrant County—within the Northern District of Texas. All municipal actions challenged here occurred in Tarrant County. And both Defendants are located at least partially within Tarrant County. Accordingly, the Court finds that this case could have been properly filed in the Northern District under 28 U.S.C. § 1391.

Having found that the threshold requirement is met, the Court now turns to the private- and public-interest factors. Although Westlake concedes that seven of the relevant factors here are neutral, the Court still reviews each factor in turn.

### A. The Private Interest Factors

#### 1. Access to the Sources of Proof

When analyzing the first private-interest factor, courts interpret "sources of proof" to encompass "non-witness evidence, such as documents and other physical

evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020); *accord Volkswagen II*, 545 F.3d at 316. Regarding the first factor, the movant must make an actual showing of the existence of relevant sources of proof, not merely an expression that sources likely exist in the prospective forum. *Def. Distributed*, 30 F.4th at 434 (citing *Volkswagen II*, 545 F.3d at 315).

In its opening brief Westlake asserted that the relevant "documents and other evidentiary materials are all located in Westlake in Tarrant County," (Dkt. #14 at 4), but failed to provide any evidence to support this assertion. Because Westlake failed to "make an actual showing of the existence of relevant sources of proof" and provided nothing more than an "expression that sources likely exist in the prospective forum," this assertion fails. *Def. Distributed*, 30 F.4th at 434 (citation omitted). Further, consistent with its failure to demonstrate that access to sources of proof favors transfer to the Northern District of Texas, Westlake conceded in its reply brief that this factor is neutral. (Dkt. #28 at 1). The Court agrees.[4]

### 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private-interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). As for party witnesses, a court

---

[4] Although Vertical Bridge points to the potential existence of relevant documents outside the State, (Dkt. #26 at 5), access to these documents from either venue would be the same, which means this factor is still neutral.

may issue subpoenas "within the state where the person resides, is employed, or regularly transacts business in person." *Id*. Because party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards *unwilling* third-party witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (quotations omitted) (emphasis added).

Westlake fails to address this factor in its briefing. That said, it does confirm that all party witnesses live and work in Tarrant County, Texas. (Dkt. #14 at 4). Westlake also confirms that its non-party witnesses live within fifty miles of both the Plano courthouse and the Fort Worth courthouse. (Dkt. #28-1). As a result, either court's subpoena power reaches the non-party defendants identified by Westlake. FED. R. CIV. P. 45(c)(1). This factor is therefore neutral.

### 3. Cost for Willing Witnesses

Private-interest factor three, which focuses on the "cost of attendance for willing witnesses," *Volkswagen II*, 545 F.3d at 315, "is probably the single most important factor in transfer analysis," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quotations omitted). It is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (quotations omitted).

8

Westlake contends that requiring its witnesses to travel to the Plano courthouse instead of the Fort Worth courthouse would require "unnecessary travel and result in substantial inconvenience on" Westlake's witnesses. (Dkt. #14 at 3–4); (Dkt. #28 at 2–3). In support of this assertion, Westlake provides a table summarizing the distances and drive times of four non-party witnesses from their homes to the Fort Worth, Sherman,[5] and Plano courthouses. (Dkt. #28-1). Below is a comparison of the distances from each witness's home to the relevant courthouses.

| Witness Name | Distance to Fort Worth Courthouse | Distance to Plano Courthouse |
| --- | --- | --- |
| Jason Alexander | 31.55 miles | 31.5 miles |
| Helen-Eve Beadle | 46.45 miles | 7.2 miles |
| Wade Carroll | 19.5 miles | 45.1 miles |
| Diana Buchanan | 16.9 miles | 33.25 miles |
| **Total Witness Travel** | **114.4 miles** | **117.05 miles** |

The total required travel for these four witnesses—whether to the Fort Worth courthouse or to the Plano courthouse—is essentially the same. What's more, the distances show that neither courthouse is more convenient for all witnesses: Ms. Beadle is far closer to the Plano courthouse, Mr. Carroll and Ms. Buchanan are closer to the Fort Worth courthouse, and Mr. Alexander is equidistant from both. More to the point, neither courthouse is even fifty miles from any non-party witness, so the burden to travel to either courthouse would be minimal. *See, e.g.*, *Volkswagen I*, 371 F.3d at 204–05 (noting that the "inconvenience of witnesses increases in direct relationship to the additional distance to be travelled" only once that distance exceeds "100 miles"). The same is true for Westlake's party witnesses. Assuming they would

---

[5] Because any court proceedings in this case will take place in the Plano courthouse, *see supra* n.2, the mileage information as to the Sherman courthouse is irrelevant.

travel from work—Westlake's Town Hall—they are only about six miles closer to the Fort Worth courthouse (25 miles instead of 31 miles). Again, a trivial difference in distance and cost. The Court therefore concludes that neither venue would be inconvenient for the witnesses. *See ESI/Emp. Sols., L.P. v. City of Dall.*, No. 4:19-CV-570, 2019 WL 5684668, at *4 (E.D. Tex. Oct. 31, 2019) (holding that, given the proximity between the Northern and Eastern Districts of Texas, neither venue would be inconvenient for any witness). This factor is neutral.

4. **All Other Practical Problems that Make Trial Easy, Expeditious, and Inexpensive**

When considering the private-interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The parties have not raised, and the Court has not identified, any reason why judicial economy would be served or frustrated by transferring this matter to the Northern District. This factor is therefore neutral.

**B. The Public-Interest Factors**

Westlake briefs none of the four public-interest factors. The Court finds that each is neutral. Neither party provides any metrics on court congestion for the Court to consider. Nor does either party argue that there are any conflicts-of-law issues or familiarity-of-law issues here. Nor could they: the claims here all arise under federal law—the bread and butter of federal courts. Finally, the local interests are the same for each district. Westlake falls within both districts, so the residents of both districts have an equal interest in the outcome of this litigation.

\* \* \* \*

None of the *Gilbert* factors favors transfer of this action to the Northern District. Because Westlake failed to show that the "gain in convenience will be *significant*," and "will *actually* materialize in the transferred venue," Westlake failed to establish good cause for transfer. *In re Clarke*, 94 F.4th at 508. As a result, "the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315. The Court thus concludes that the Northern District is not a clearly more convenient venue to resolve this action.

### IV. CONCLUSION

For the reasons stated above, it is therefore **ORDERED** that Defendants' Motion to Transfer Venue and Brief in Support, (Dkt. #14), is **DENIED**.

**So ORDERED and SIGNED this 17th day of March, 2025.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE