IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **VERTICAL BRIDGE** | § | |
| **DEVELOPMENT, LLC** | § | |
| | § | |
| **v.** | § | **NO. 4:24-CV-00804-SDJ-BD** |
| | § | |
| **THE TOWN OF WESTLAKE,** | § | |
| **TEXAS,** *et al.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Vertical Bridge Development, LLC, sued the Town of Westlake, Texas, and its council ("the town," collectively) for alleged violations of the Telecommunications Act of 1996, Pub. L. No. 104–104, 110 Stat. 56 (codified at 47 U.S.C. ch. 5). Dkts. 1 (original complaint), 58 (supplemental complaint). The parties filed cross-motions for summary judgment, Dkts. 99 (Vertical Bridge's motion), 103 (the town's motion); *see* Dkts. 107 (Vertical Bridge's response), 108 (the town's response), 109 (Vertical Bridge's reply), 110 (the town's reply). Vertical Bridge's motion for summary judgment should be granted and the town's denied.

**BACKGROUND**

Vertical Bridge challenges the town's denial of its application for a permit to build a cell-phone tower. Dkt. 58 at 1. The material facts are undisputed.

The story starts in December 2018, when town representatives first discussed the proposed tower and the need for a special-use permit, sometimes referred to as a "SUP," to authorize its construction. *See* Westlake, Tex., Zoning Code §§ 102-94(2), 102-96(2) (2022). Years later, the town council adopted a resolution that "authorize[d] the Town Manager to engage stakeholders and cellular providers in formal discussions related to the design, construction and ownership of a potential communications tower." Dkt. 104-2. The council eventually authorized the town manager to execute a lease agreement with Vertical Bridge to allow for construction of the proposed tower at the town's fire station. Dkt. 104-3 at 2, 102-5 at 4. The lease was executed in

November 2022. Dkt. 101-9 at 2; *see also* Dkts. 100-6 at 2–3, 104-1 at 6–7, 104-4 at 5 (reflecting the town's initial support for the project).

Then the town's leadership changed. An election replaced the mayor and all but one council member.

Months later, on July 9, 2024, the town's zoning commission held a public hearing on Vertical Bridge's permit application and voted to recommend that the town council deny it. Dkt. 106-9 at 2–3; *see* Westlake, Tex., Zoning Code § 102-63(e)(1), (2). And six days after that, on July 15, the council held a public hearing to decide whether to approve or deny the application. Dkt. 106-1 at 4–5. Following a brief discussion, the council unanimously denied it by voice vote on a motion. Westlake, Tex., Town Council Meeting Video at 1:56:01–1:56:14 (July 15, 2024), https://westlaketx.new.swagit.com/videos/310180?Mode2=Video.

Four days later, in the absence of any written documentation of the denial, Vertical Bridge representative Ralph Wyngarden emailed town manager Wade Carroll the following message: "Vertical Bridge is considering its options, including potential litigation. When will a written decision be available?" Dkt. 102-19 at 4. Carroll responded by referring Wyngarden to Stan Lowry, the town's attorney, who was copied on Carroll's response to Wyngarden's email. *Id.* at 3. Eleven days later, Wyngarden emailed Lowry two questions: "Will there be a decision letter from the Town documenting the Town Council's denial of this Specific Use Permit application on July 15? Or will the approved minutes, once available, be the only documentation of this decision in writing?" *Id.* at 2–3. A couple of hours later, Lowry sent a two-sentence response: "There is no written decision from the Town Council. The minutes, once approved, will be available." *Id.* at 2.

Three weeks after the July 15 meeting, and within a week of Lowry's email to Wyngarden, the town approved meeting minutes documenting the permit denial. Dkts. 102-6 at 2, 106-1 at 4–5. Vertical Bridge filed its original complaint in this lawsuit 29 days later. It alleged, among other things, that the denial "amount[ed] to an effective prohibition of enhanced cellular service" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) and also "violate[d] 47 U.S.C. § 332(c)(7)(B)(iii)'s requirement" that the town's decision on Vertical Bridge's permit application "'be in writing and

supported by substantial evidence contained in a written record.'" Dkt. 1 at 1–2, 9–11; *see also id.* at 12–13 (further alleging a preemption claim under 47 U.S.C. § 253(a)).

For the remainder of 2024, the minutes of the July 15 meeting served as the only written documentation of the town council's decision. But in March 2025, the council addressed the matter again. After a closed-session discussion with legal counsel, it voted unanimously to adopt Resolution No. 25-12, which "contains a written report with findings for denial as required by [Code of Ordinances of the Town of Westlake, Texas] § 102-94(6)." Dkt. 102-10 at 4; *see* Dkt. 108 at 8 (quoting § 102-94(6)).

That development caused Vertical Bridge to seek leave to supplement its complaint. In its motion requesting the opportunity to supplement, Vertical Bridge explained its intent to plead that the town's approval of the meeting minutes in August 2024 or, alternatively, the town's adoption of Resolution No. 25-12 in March 2025 was the "final action" for purposes of § 332(c)(7)(B)(v), which provides a 30-day deadline for filing suit under the Act. Dkt. 48 at 2. The court granted the motion. Dkt. 57.

In its supplemental complaint, Vertical Bridge maintained its previous allegations based on the meeting minutes. Dkt. 58 at 1–2, 9–12; *see also id.* at 12–13 (realleging a preemption claim). But it added alternative claims, asserting that Resolution No. 25-12 likewise violates the Act's effective-prohibition and substantial-evidence limitations. *Id.* at 13–15.

The parties filed cross-motions for summary judgment. Vertical Bridge seeks summary judgment on its effective-prohibition and substantial-evidence claims, requesting a mandatory injunction requiring the town council to grant its permit application and allow construction of the proposed tower to proceed. *See* Dkt. 99 at 24 (statement of issues). In its motion for summary judgment, the town contends that Vertical Bridge lacks Article III standing because Resolution No. 25-12, which it now claims was the "final action" for purposes of § 332(c)(7)(B)(v), automatically terminated the fire-station lease. *See* Dkt. 103 at 24 (statement of issues). It further contends that the resolution was supported by substantial evidence and did not effectively prohibit

3

wireless services in the town. *See id.* As noted, the parties filed responses and replies, all of which the court considered alongside the motions.

## LAW

### I.  The Telecommunications Act of 1996

In passing the Act in 1996, Congress stated that it aimed to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub. L. No. 104–104, 110 Stat. 56. The Act generally preserves "the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). But it imposes several "[l]imitations" on that authority. *Id.* § 332(c)(7)(B).

One limitation is that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." *Id.* § 332(c)(7)(B)(i)(II). Another is that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii). A third is that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." *Id.* § 332(c)(7)(B)(v). That final provision also requires "[t]he court [to] hear and decide such action on an expedited basis."

To be entitled to relief, a plaintiff need establish a violation of only one of § 332(c)(7)(B)'s limitations. *See, e.g.*, *Vertex Tower Assets, LLC v. Town of Canton*, 731 F. Supp. 3d 174, 192 (D. Mass. 2024); *ExteNet Systems, Inc. v. Village of Plandome*, No. CV 19-7054 (GRB)(RLM), 2021 WL 4449453, at *23 (E.D.N.Y. Sept. 29, 2021); *Branch Towers, LLC v. City of Knoxville*,

4

No. 3:15-cv-00487, 2016 WL 3747600, at \*8 (E.D. Tenn. July 11, 2016). So in a case involving alleged violations of multiple § 332(c)(7)(B) limitations, a court need not look beyond the first limitation it concludes was transgressed.

## II. Summary Judgment

A summary-judgment movant bears the initial burden of demonstrating, by reference to record evidence, if necessary, that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if, under the governing substantive law, it could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the movant would bear the burden of proof at trial, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense" it seeks to prove. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant would bear the burden of proof at trial, the movant may carry its initial summary-judgment burden by asserting that "the nonmovant has failed to establish an element essential to" its case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). The nonmovant may then avoid summary judgment by demonstrating the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[A] party opposing a properly-supported summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (quotation marks omitted). Although the court must resolve all reasonable doubts in the nonmovant's favor, *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. Unit B Sept. 1981), "[c]onclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment," *Sanches v. Carrollton-Farmers Branch ISD*, 647 F.3d 156, 165 (5th Cir. 2011).

When presented with cross-motions for summary judgment, the court considers "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Morgan v. Plano ISD*, 589 F.3d 740, 745 (5th Cir. 2009). "[E]ach movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004). Summary judgment is appropriate on cross-motions "[i]f there is no genuine issue and one of the parties is entitled to prevail as a matter of law." *Id.* at 539.

## DISCUSSION

### I. Vertical Bridge's Standing to Sue

A federal court may reach the merits of a dispute only if it has jurisdiction to do so. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (noting that "[w]ithout jurisdiction the court cannot proceed at all in any cause" (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868) (quotation marks omitted))). That said, "merits and jurisdiction will sometimes come intertwined." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 178 (2017).

The existence of Article III standing is a jurisdictional requirement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). To establish it, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The town argues that Vertical Bridge cannot make the last of those showings. Its argument revolves around the automatic-termination provision in the lease for space at the town's fire station:

> Notwithstanding anything to the contrary in this Agreement, to the extent that [Vertical Bridge]'s zoning application for the installation of the [tower] within the Premises on the Property is denied and such zoning denial becomes final and unappealable, then this Agreement shall terminate automatically effective as of the date that such zoning denial becomes final and unappealable.

Dkt. 101-9 at 3. The town argues that Resolution No. 25-12 triggered that provision, extinguishing the lease that Vertical Bridge needed to put its requested permit to use.

The town explains that the particular type of permit at issue, which it implicitly contends must be secured through a "zoning application" within the meaning of the automatic-termination provision, *id.*, is not subject to appeal under the town code or state law. It asserts that a challenge to the denial of such a permit under the Act is an original action in, rather than an appeal to, a federal district court. And in the absence of the lease, the town goes on to assert, a court order requiring the permit to issue would not redress Vertical Bridge's injury because it could not result in the tower being built or operated. Citing cases explaining that the Act does not interfere with municipalities' proprietary decisions regarding sales or leases of property, as opposed to their regulatory decisions regarding the issuance of permits for telecommunications projects, the town adds that Vertical Bridge cannot properly ask the court for an order requiring the town to lease its land anew to Vertical Bridge. In short, the town argues that "Vertical Bridge needs both a permit and a lease. This Court could compel the former but not the latter." Dkt. 103 at 30.

Although the lease earlier lists applications for "zoning variances," "zoning ordinances," and "special use permits" as distinct requests for "[g]overnment [a]pprovals," Dkt. 101-9 at 2 (emphasis removed), Vertical Bridge does not challenge the town's implied position that an application for a special-use permit is a "zoning application" for purposes of the automatic-termination provision, *id.* at 3. It instead asserts that the town's redressability argument wrongly assumes that Resolution No. 25-12 is valid, noting that the issue of the resolution's validity is a key piece of the parties' dispute on the merits. It then focuses on the word "unappealable" in the lease, arguing that the town's restrictive view of that word would render it "effectively meaningless" because there is no avenue for administrative appeal of a decision denying a special-use permit, Dkt. 107 at 15, and citing a dictionary definition of "appeal" that, in its view, is broad enough to encompass a federal-court challenge to the denial of a permit application. Finally, Vertical Bridge notes that it has challenged Resolution No. 25-12 in this court "and seeks injunctive relief ordering [the] Town Council to approve the [permit] Application" that the resolution purported to deny,

adding that, if it obtains that relief, "and the [permit] Application is approved, the Lease can no longer be construed as terminated." *Id.* at 16. In short, Vertical Bridge contends that the automatic-termination language in the lease was never triggered because its permit application has not yet been finally and validly denied.

The town is correct that, in a suit under the Act, a court may not order a municipality to enter into a lease with a company for use of municipal property. *See Omnipoint Holdings, Inc. v. City of Southfield*, 203 F. Supp. 2d 804, 815 (E.D. Mich. 2002); *Sprint Spectrum, L.P. v. City of Woburn*, 8 F. Supp. 2d 118, 121–22 (D. Mass. 1998). A court may, however, order a municipality to approve a company's permit application that was denied at the local level. *See City of Woburn*, 8 F. Supp. 2d at 121–22; *infra* Part II.C (citing additional authorities on that point).

Here, Vertical Bridge principally contends that the approved meeting minutes effected the town's denial of its permit application. The town contends that Resolution No. 25-12 had that effect but notes that its redressability argument would be unchanged if the court accepted Vertical Bridge's assertion that the meeting minutes effected the denial. Dkt. 110 at 7 n.3. Either way, the availability of the mandatory injunction that Vertical Bridge seeks from this court reflects that the challenged denial of its permit application (assuming that it qualifies as a "zoning denial," Dkt. 101-9 at 3) could not be considered "final and unappealable," *id.*, in any practical sense.

The town's technical argument that there is no way to appeal the denial of a special-use permit, Dkt. 103 at 26–27, only highlights the problem with its position. "[F]inal and unappealable" in the automatic-termination provision, Dkt. 101-9 at 3, must describe an action that may no longer be challenged under the Act. Otherwise, the phrase "and unappealable," Dkt. 101-9 at 3, would do no work, and the town would have developed a blueprint for depriving telecommunications companies of their ability to sue under the Act, at least for projects destined for public land: enter into a land lease designed to self-destruct the second a permit denial that would otherwise open the Act's 30-day window to sue, 47 U.S.C. § 332(c)(7)(B)(v), becomes final at the local level— even if in flagrant violation of the Act.

The town now argues that "[n]othing in the Lease obligated [Vertical Bridge] to pursue a project that required" a special-use permit. Dkt. 110 at 6. But the lease expressly mentioned that type of permit, Dkt. 101-9 at 2, 6 (¶¶ 1(a), 9(c)), and the agenda for a 2018 meeting of the town council reflects that a special-use permit would be required for the project, Dkt. 100-10 at 4. Indeed, the town itself notes that "[t]he administrative record shows that staff believed the Proposed Tower required [a special-use permit] from the outset and published that assessment at least three times before the Town Council adopted" the resolution authorizing the town manager to execute a lease agreement with Vertical Bridge, adding that "a representative from Vertical Bridge attended at least one such meeting where staff referenced the [special-use-permit] requirement in its written report." Dkt. 103 at 28 (footnotes omitted).

Creative though it may be, the town's redressability argument fails. Vertical Bridge need not show that success on one or more of its claims under the Act will "revive" the lease. Dkt. 110 at 5–9. Read in proper context, the automatic-termination provision does not support the conclusion that the lease terminated in the first place, before Vertical Bridge had its day in court under the Act. *See Am. Tower, L.P. v. City of Huntsville*, No. CV–99–B–2933–NE, 2000 WL 34017802, at *6 (N.D. Ala. Sept. 29, 2000) (rejecting a similar redressability argument), *rev'd on other grounds*, 295 F.3d 1203 (11th Cir. 2002). And contrary to the town's argument, this case is not similar to *City of Woburn*, in which a mayor agreed to execute a lease of city property for installation of antennae arrays only if the company "successfully obtained the special permit required by the Town's zoning ordinance." 8 F. Supp. 2d at 119. Here, execution of the lease was not contingent upon the success of Vertical Bridge's permit application; the lease was executed before the town acted on that application. The town could have proceeded the way the Woburn mayor did, but it did not.

Relevant to that point, the town recognizes that Vertical Bridge is "no babe in the legal woods." Dkt. 103 at 28 (quoting *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 315 (2015) (Roberts, C.J., dissenting)). It presumably knew why it should secure a lease before it secured a permit. And to the extent the town suggests that Vertical Bridge has now made the same mistake twice, *see* Dkt. 110 at 7 n.4, it is itself mistaken. In the case the town cites, the court did not consider a

9

redressability argument; it did not discuss standing at all. *Vertical Bridge Dev., LLC v. Brawley City Council*, No. 21-cv-02153-AJB-AHG, 2023 WL 3568069 (S.D. Cal. Mar. 24, 2023). It instead found, on the merits, that a city that gave Vertical Bridge the exclusive option to lease land for a cell tower in a city park complied with § 332(c)(7)(B) when it denied Vertical Bridge's application for a conditional-use permit. *Id.* at *4–8. And it confirmed that "the City's business decision to give Vertical Bridge an option to lease a portion of [the p]ark, in its capacity as a landlord, is separate and distinct from the zoning and land use decision it made, in its capacity as a regulator." 2023 WL 3568069, at *6. Here, it is the town that tries to collapse those distinct matters through its insupportably restrictive reading of the automatic-termination provision. *See* Dkt. 100-2 at 5 (email from Carroll to the town council stating that "[t]he only out [he] can see is if [the zoning commission] does not approve the zoning change necessary for the installation of the Tower").

Because Vertical Bridge was injured by the town's denial of its permit application, the other essential elements of standing are also present, *see TransUnion*, 594 U.S. at 423; *Juidice v. Vail*, 430 U.S. 327, 331 (1977) (reflecting that a court is obliged to consider standing even if no party asks it to), and 28 U.S.C. § 1331 gives the court jurisdiction over this suit arising under the Act. So the court will proceed to the merits.

## II. Vertical Bridge's Entitlement to Summary Judgment and Injunctive Relief

Vertical Bridge met its deadline under § 332(c)(7)(B)(v) to challenge the town's denial of its permit application, and the town failed to meet § 332(c)(7)(B)(iii)'s requirement to issue a contemporaneous written decision supported by substantial evidence. In light of that failure, the court need not reach Vertical Bridge's effective-prohibition claim under § 332(c)(7)(B)(i)(II). The town's violation of § 332(c)(7)(B)(iii) entitles Vertical Bridge to an injunction requiring issuance of the permit.

### A. Vertical Bridge's satisfaction of § 332(c)(7)(B)(v)'s deadline to sue

Under § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action . . . by a . . . local government . . . may, within 30 days after such action . . . , commence an action in any court of competent jurisdiction." Regardless of whether the town's approval of the meeting minutes or its

10

adoption of Resolution No. 25-12 constituted the town's "final action," Vertical Bridge commenced this action in federal court "within 30 days." 47 U.S.C. § 332(c)(7)(B)(v).

If the meeting minutes constituted the final action, Vertical Bridge's original complaint was timely. The town approved the minutes on August 5, 2024, Dkts. 102-6 at 2, 106-1 at 4–5, and Vertical Bridge filed its original complaint 29 days later, Dkt. 1, after the email exchange involving Wyngarden, Carroll, and Lowry indicated that the meeting minutes would be the written documentation of the town's July 15 denial of Vertical Bridge's permit application. *See City of Roswell*, 574 U.S. at 305 n.4 (rejecting the city's argument that "the clock does not begin to run until after the reasons are given" and confirming that the relevant "final action" for purposes of § 332(c)(7)(B)(v) "is the issuance of the written notice of denial, not the subsequent issuance of reasons explaining the denial"); *Athens Cellular, Inc. v. Oconee County*, 886 F.3d 1094, 1104 (11th Cir. 2018) (concluding that a county board's decision became "final" for purposes of the Act when the board approved the minutes of the meeting at which it voted to deny the plaintiff company's permit application).

And if, as the town contends, Resolution No. 25-12 instead constituted the "final action," § 332(c)(7)(B)(v), Vertical Bridge timely supplemented its complaint. As the court previously noted, Vertical Bridge filed its motion to supplement within 30 days of the town's adoption of Resolution No. 25-12, doing "what a prudent party would do to preserve its claims." Dkt. 57 at 4–5.

But the town is wrong about Resolution No. 25-12. The meeting minutes constituted the final action. *City of Roswell*, 574 U.S. at 305 n.4. And as explained next, that timely challenged action violated the limitation imposed by § 332(c)(7)(B)(iii).

**B.  The town's failure to satisfy § 332(c)(7)(B)(iii) as interpreted in *City of Roswell***

Under § 332(c)(7)(B)(iii), "[a]ny decision by a . . . local government . . . to deny a request to place, construct, or modify personal wireless service facilities" must "be in writing and supported by substantial evidence contained in a written record." In *City of Roswell*, the Supreme Court interpreted that provision, in light of the relevant statutory context, 574 U.S. at 302, to "require[]

localities to provide reasons when they deny applications to build cell phone towers," *id.* at 300. The Court explained that a court "must be able to identify the reason or reasons why the locality denied the application" "[i]n order to determine whether a locality's denial was supported by substantial evidence, as Congress directed." *Id.*; *see Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002) (stating that "a board's decision may not present a moving target" and that the court would "not uphold a board's denial of a permit on grounds that it did not present in its written decision"). "[T]he[] reasons need not be elaborate or even sophisticated." *City of Roswell*, 574 U.S. at 302. They do, however, need to be "clear enough to enable judicial review." *Id.*

The Court went on to explain that, although "the text and structure of the Act render it inescapable that localities must provide reasons in writing when they deny applications," the Court could "locate in the Act no command—either explicit or implicit—that localities must provide those reasons in a specific document." *Id.* at 303. That means the reasons need not "appear in the same writing that conveys the locality's denial of an application." *Id.* at 302. The Court "hasten[ed] to add," however,

> that a locality cannot stymie or burden the judicial review contemplated by the statute by delaying the release of its reasons for a substantial time after it conveys its written denial. The statute provides that an entity adversely affected by a locality's decision may seek judicial review within 30 days of the decision. § 332(c)(7)(B)(v). Because an entity may not be able to make a considered decision whether to seek judicial review without knowing the reasons for the denial of its application, and because a court cannot review the denial without knowing the locality's reasons, the locality must provide or make available its written reasons at essentially the same time as it communicates its denial.

*Id.* at 304.

Here, the town denied Vertical Bridge's permit application by voice vote at the July 15, 2024, meeting, as documented by the minutes it issued 21 days later. Those minutes, which were the only arguably contemporaneous written documentation of the town's decision, failed to satisfy § 332(c)(7)(B)(iii) because they neither contained nor identified the reasons for the denial, leaving the town's decision unsupported by "substantial evidence contained in a written record." And to

12

the extent the town tried to cure that failure by issuing Resolution No. 25-12 many months later, it ran afoul of the timing requirement that *City of Roswell* imposed based on the statute's text and structure.

### 1.    The meeting minutes' substantive deficiency

As noted, the reasons supporting a locality's denial of a permit application of the sort Vertical Bridge filed must be "clear enough to enable judicial review." *City of Roswell*, 574 U.S. at 302. As another court has put it, § 332(c)(7)(B)(iii) requires a locality to "specify what its reasons were so that no one has to parse a record and guess which of the things mentioned therein was ultimately found persuasive." *Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 554 (S.D.N.Y. 2009).

The "detailed written [meeting] minutes" at issue in *City of Roswell*, 574 U.S. at 298, summarized "a 2–hour–long public hearing on . . . [the] petitioner's application," *id.* at 296, enabling the Court to understand and evaluate the specific reasons for the denial, *id.* at 297 (citing and quoting the minutes). And in *Capital Telecom Holdings II, LLC v. Grove City*, a lower court likewise had "no trouble identifying the specific reasons" for the defendant city's denial of a zoning application in the relevant meeting minutes, which "recap[ped] a discussion amongst the City Council about several very real and significant problems with the proposed cell tower," including noncompliance with requirements of the city's zoning code. 403 F. Supp. 3d 643, 654 (S.D. Ohio 2019). The court was able to conduct a meaningful review based on the concerns of city council members reflected in the minutes and the specific code sections that supported the council's denial of the application. *Id.*

On the other hand, meeting minutes that offer "no explanation," preventing a court from "evaluat[ing] whether substantial evidence sufficiently supports the denial," *Tarpon Towers II, LLC v. City of Sylvania*, 625 F. Supp. 3d 667, 673 (N.D. Ohio 2022), are insufficient. In *Virginia Metronet, Inc. v. Board of Supervisors of James City County*, for instance, the meeting minutes stated only: "Individual Board members spoke to reasons for denial such as the visibility of the entire tower because it is sited in an open field; residents persistent in not wanting tower in neighborhood;

13

and the belief that there is a more appropriate site for a tower in the vicinity." 984 F. Supp. 966, 970 (E.D. Va. 1998) (direct quotation of the minutes).

Here, the relevant part of the town council's July 15 meeting minutes states, in full:

> Hold a public hearing, discuss, and consider adopting an Ordinance to approve a Specific Use Permit for a Wireless Cell Tower to be located at 2000 Dove Road, also known as the Town of Westlake Fire Station, an approximately 5.02-acre site. The property is generally located on the northwest intersection of FM 1938 Davis Blvd. and Dove Road. (Helen-Eve Beadle, Interim Town Planner)
> a. Staff Presentation
> b. Hold Public Hearing
> c. Discuss and Consider
> d. Act
>
>> a. Staff Presentation--Helen-Eve Beadle, Interim Town Planner, provided an overview of the SUP application for a 130-foot wireless cell tower to be located at Dove Road and Davis Boulevard. The Planning and Zoning Commission voted on July 9, 2024, to recommended denial of the SUP to Town Council and cited that there is not citizen support for the project and that other options to provide coverage have not been explored adequately. Matthew Gruban, representing the applicant, Vertical Bridge, gave a presentation in support of the SUP application.
>> b. Public Hearling--Mayor Greaves opened the public hearing and asked if there was anyone to speak regarding the matter. Anna Eisen, 1905 Gaillardia Court, resident, spoke in opposition of this item. There was no one else to speak and Mayor Greaves closed the public hearing.
>> c. Consider and discuss--Completed.
>> d. Act-- Motion by Council Member White and Motion Second by Council Member Asselta to deny the Specific Use Permit for the wireless cell tower. Mayor Greaves called for the vote.
>> MOTION TO DENY THE SPECIFIC USE PERMIT FOR THE WIRELESS CELL TOWER TO BE LOCATED AT 2000 DOVE ROAD APPROVED UNANIMOUSLY BY ALL PRESENT. COUNCIL MEMBER QUINT WAS ABSENT.
>>
>> After the vote, Mayor Greaves recognized Bilal Altaf, Verizon. He spoke to address some of the questions and concerns that were raised during the presentation.

Dkt. 102-5 at 4–5 (typos in original).

Nothing in that language "identif[ies] the reason or reasons why the [town] denied [Vertical Bridge's] application." *City of Roswell*, 574 U.S. at 300. At best, the phrases "there is not citizen support for the project" and "other options to provide coverage have not been explored

14

adequately," Dkt. 102-5 at 4, could be read to suggest reasons for the denial. But those phrases do not even purport to describe the town council's reasoning. They are attributed instead to the town's zoning commission, which merely "recommended denial of the [permit] to [the] Town Council." *Id.*; *see* Dkt. 106-9 at 3 (minutes of the zoning commission's July 9, 2024, hearing reflecting that the commission's recommendation to the town council was "based on no citizen support and because the Town has not vetted all options available to improve wireless coverage"). The town council's separate and subsequent action is recorded in the minutes through the words "Consider and discuss--Completed" and the language after "Act--". Dkt. 102-5 at 4. But as the town conceded in its response to Vertical Bridge's motion for summary judgment, those parts of the minutes do not even hint at a reason or reasons for the denial. *See* Dkt. 108 at 9.

The town also acknowledges that the applicable version of its code called for a "[w]ritten report upon denial of request for building permit or specific use permit," requiring the town to "document in writing any denial of a request to place, construct, or modify wireless communication facilities or antenna" and specifying that "[s]uch documentation shall be supported by substantial evidence within the written record." *Id.* § 102-94(6) (emphasis omitted) (quoted in Dkt. 108 at 8). That no such report accompanied the July 15 meeting or the minutes is not, as the town contends, an indication that the denial came only later, through Resolution No. 25-12. It instead reflects that the town failed to comply with its own code.

That failure also violated the Act. As the town concedes, Dkt. 108 at 9, the sparse meeting minutes cannot reasonably be viewed as the written report that § 332(c)(7)(B)(iii) and *City of Roswell* require. In other words, the minutes are not the type of "detailed written minutes" that the Supreme Court has indicated may satisfy § 332(c)(7)(B)(iii) by teeing up the substantial-evidence inquiry that the statute ensures. *City of Roswell*, 574 U.S. at 298, 300. Far from being "clear enough to enable judicial review," *id.* at 302, the meeting minutes would leave the court adrift, forcing it to speculate about why the town denied the application. That is insufficient. As the town itself put it, "the Minutes contain no reasons for the denial that would enable judicial review." Dkt. 108 at 15. And again, the Supreme Court has foreclosed any argument that "the

clock [to file suit] does not begin to run until after the reasons are given." *City of Roswell*, 574 U.S. at 305 n.4.

### 2. The resolution's untimeliness

If the town had issued its meeting minutes alongside a separate document presenting the substantive information that § 332(c)(7)(B)(iii) requires, it would have complied with that part of the Act, assuming its reasons were sufficient. The Supreme Court has confirmed, after all, that the reasons for a locality's denial of a permit application need not "appear in the same writing that conveys the locality's denial of an application." *Id.* at 302.

But the town's belated effort to salvage its position based on Resolution No. 25-12 fails. That resolution was not, as the town contends, the "final action," 47 U.S.C. § 332(c)(7)(B)(v), or "decision," *id.* § 332(c)(7)(B)(iii), that Vertical Bridge challenged. The meeting minutes were. And Resolution No. 25-12 came far too late to qualify as the "essentially contemporaneous[]" "written record" that *City of Roswell* requires. 574 U.S. at 307. The town cannot backfill the basis for its summer 2024 decision denying Vertical Bridge's permit application through issuance of Resolution No. 25-12 in the spring of 2025.

At the beginning of this suit, the town agreed that the meeting minutes constituted the final action. The parties' joint report under Federal Rule of Civil Procedure 26(f) presented the town's contention that "the Denial met all the requirements under 47 U.S.C. § 332(c)(7)(B)(iii) as a written decision with contemporaneously available reasons supported by substantial evidence the Proposed Tower did not meet the required findings for [a special-use permit] under the Ordinance." Dkt. 24 at 3. At that time, the meeting minutes were the only written documentation of the permit denial. *See* Dkt. 24 (reflecting that the Rule 26(f) report was filed December 11, 2024, several months before Resolution No. 25-12 was adopted).

The town was right. The meeting minutes left no room to question its final decision on the permit application:

> Motion by Council Member White and Motion Second by Council Member Asselta to deny the Specific Use Permit for the wireless cell tower. Mayor Greaves called for the vote.

> MOTION TO DENY THE SPECIFIC USE PERMIT FOR THE WIRELESS CELL TOWER TO BE LOCATED AT 2000 DOVE ROAD APPROVED UNANIMOUSLY BY ALL PRESENT.

Dkt. 102-5 at 4. Again, "[t]he relevant 'final action' is the issuance of the written notice of denial"—here, the meeting minutes—"not the subsequent issuance of reasons explaining the denial." *City of Roswell*, 574 U.S. at 305 n.4.

The town has, of course, revised its position. It now contends that Resolution No. 25-12 simultaneously constituted the final action and provided the statement of reasons the statute requires. Dkts. 103, 108, 110. But that contention falters even under the language of the resolution. After a "Background" section, Resolution No. 25-12 states: "**Denial Affirmed.** The Town Council affirms its vote on July 15, 2024, to deny the Application, and approves the detailed findings, reasons and evidence for such denial contained in this Resolution as the true and correct basis for the Town Council's vote." Dkt. 102-10 at 4. That sentence reflects that the town was not, in fact, issuing its "final action," 47 U.S.C. § 332(c)(7)(B)(v), in March 2025 as part of Resolution No. 25-12. It was providing reasons to support the final action that the meeting minutes documented. To the extent a later paragraph of the resolution suggests otherwise, *see* Dkt. 102-10 at 25 (Paragraph 4: "**Final Action; No Appeals.** This Resolution represents the final action by the Town on the Application. No further administrative appeals are available to the Applicant."), it is not credible in light of the undisputed evidence, the text of the Act, and *City of Roswell*.

Those authorities required the town to issue its reasons alongside, or soon after, it adopted the meeting minutes. *See City of Roswell*, 574 U.S. at 304 (explaining that § 332(c)(7)(B)(v) requires a locality to "provide or make available its written reasons at essentially the same time as it communicates its denial" of a permit application). Otherwise, a locality could "stymie or burden the judicial review contemplated by the statute." *Id.*

That is why, in decisions handed down both before and after *City of Roswell* was decided, numerous courts have disregarded post-hoc rationales when assessing whether localities' decisions were supported by substantial evidence. *E.g.*, *Mun. Commc'ns, LLC v. Cobb County*, 796 F. App'x 663, 670 (11th Cir. 2020); *U.S. Cellular Corp. v. Bd. of Adjustment of City of Seminole*, 180 F. App'x

791, 794 (10th Cir. 2006); *Nat'l Tower*, 297 F.3d at 21; *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1220 n.9 (11th Cir. 2002); *New Cingular Wireless PCS, LLC v. Town of Fenton*, 843 F. Supp. 2d 236, 247 (N.D.N.Y. 2012); *see also Va. Metronet*, 984 F. Supp. at 973 & n.9 (explaining that the timing of a letter stating the basis for a locality's denial of a permit application "strongly suggests that the letter [wa]s pretextual"). And it is why the town cannot properly rely on an expert report submitted "[o]n April 18, 2025." Dkt. 103 at 22.

For those reasons, the court need not scrutinize paragraph two of Resolution No. 25-12—which, in numerous subparts, unfolds over twenty-some pages, Dkt. 102-10 at 4–24, and was presumably meant to provide the substantive information that § 332(c)(7)(B)(iii) and *City of Roswell* require. That paragraph appears to have been produced during the type of "secret, closed-door proceedings" that the Chief Justice, in his *City of Roswell* dissent, noted were uncommon in this context. 574 U.S. at 315 (noting that, "[a]lmost invariably in cases addressing Section 332(c)(7), the relevant local authority has held an open meeting at which the applicant was present and the issues publicly aired"); *see* Dkt. 99 at 22–23; *supra* Part I (noting the town's reference to this same "babe in the legal woods" passage from the Chief Justice's dissent). But regardless of how Resolution No. 25-12 came into being, it came too late.

Although *City of Roswell* did not quantify the tolerable delay in minutes, hours, or days, it makes something short of 26 days the outside boundary. The Court noted that § 332(c)(7)(B)(v) requires "an entity adversely affected by a locality's decision [to] seek judicial review within 30 days" of a permit denial and observed that "an entity may not be able to make a considered decision whether to seek judicial review without knowing the reasons for the denial of its application." *City of Roswell*, 574 U.S. at 304. Because of that, a 26-day delay is too long. *Id.* at 308.

Here, the delay was more than half a year. The resolution was untimely by a long shot.

### C.  Vertical Bridge's entitlement to injunctive relief

The Act does not specify a remedy for violation of § 332(c)(7)(B). It does, however, direct the court to "hear and decide" a challenge under that provision "on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

A mandatory injunction requiring the violating locality to issue the requested permit is usually the right medicine. *See, e.g.*, *Tennessee ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 399 (6th Cir. 2005); *Preferred Sites*, 296 F.3d at 1221–22; *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999); *Verizon Wireless of the E., L.P. v. Columbia County*, No. CV 114-211, 2015 WL 1877452, at *17 (S.D. Ga. Apr. 23, 2015); *cf. Nat'l Tower*, 297 F.3d at 24 (stating that "[w]hile we can conceive of circumstances in which a remand may be in order—for example, an instance of good faith confusion by a board that has acted quite promptly—this case is not a candidate for remand to the board"). That type of injunction is what Vertical Bridge sought in its motion for summary judgment. Dkt. 99 at 47; *see* Dkts. 1 at 15–16, 58 at 18–19 (original and supplemental complaints requesting injunctive relief). In its summary-judgment filings, the town neither challenged that request nor asserted that some other form of relief would be more appropriate in the event that Vertical Bridge prevailed.

That makes sense. A remand would just give the town another chance to paper over its violation of the Act, rendering Vertical Bridge's summary-judgment victory illusory. The court should instead issue the requested injunction.

## RECOMMENDATION

It is **RECOMMENDED** that Vertical Bridge's motion for summary judgment, Dkt. 99, be **GRANTED**, that the town's motion for summary judgment, Dkt. 103, be **DENIED**, and that the court order the town to grant the permit that Vertical Bridge sought.

\* \* \*

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal

19

conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 9th day of December, 2025.

_____

Bill Davis
United States Magistrate Judge